## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| KAUFMAN LLC,<br>　　　*Plaintiff*,<br><br>　　v.<br><br>ESTATE OF HERBERT FEINBERG; et al.,<br>　　　*Defendants*. | No. 3:13-cv-01259 (VAB) |

## RULING AND ORDER ON MOTIONS IN LIMINE

Kaufman LLC ("Kaufman" or "Plaintiff") has sued Herbert Feinberg (now the Estate of Herbert Feinberg, or the "Estate"),[1] Catahama LLC ("Catahama"), Fresh Harvest River LLC ("FHR"), and Gotham Enterprises and Affiliate ("Gotham") (collectively, "Defendants"), asserting breach of contract and related claims.

In advance of trial, the parties have filed various motions to preclude or limit certain types of evidence. *See* Defs.' Mot. in Lim. to Disqualify and to Preclude Narrative Test., ECF No. 442 (Sept. 2, 2022) ("Mot. to Disqualify"); Defs.' Mot. in Lim. re Prejudicial and Irrelevant Evid., ECF No. 443 (Sept. 2, 2022) ("Prejudicial Evid. Mot."); Pl.'s Mot. in Lim. to Preclude Prejudicial Arg. Prior to Establishment of a Foundation, ECF No. 444 (Sept. 5, 2022) ("UPL Mot."); Pl.'s Mot. in Lim. re: Arg. on Irrelevant and Prejudicial Evid., ECF No. 453-1 (Sept. 12, 2022) ("Harvard Mot."). Defendants also seek to disqualify Alan Kaufman from serving as trial counsel on behalf of Plaintiff. *See* Mot. to Disqualify.

---

[1] On September 10, 2020, Defendants filed a suggestion of death as to Herbert Feinberg. Suggestion of Death, ECF No. 326 (Sept. 10, 2020). Following a stay of the proceedings, *see* Order, ECF No. 329 (Sept. 14, 2020); Order, ECF No. 332 (Oct. 17, 2020); Order Staying Case, ECF No. 336 (Dec. 5, 2020), the Court granted Defendants' motion to substitute the Estate of Herbert Feinberg for Herbert Feinberg as a defendant, Order, ECF No. 340 (Jan. 27, 2021).

For the following reasons, Defendants' motion to disqualify and to preclude narrative testimony, ECF No. 442, is **GRANTED in part** and **DENIED in part**; Defendants' motion to preclude prejudicial and irrelevant evidence, ECF No. 443, is **GRANTED in part** and **DENIED in part without prejudice** to renewal at trial; Plaintiff's motion to preclude reference to Mr. Kaufman's alleged unauthorized practice of law, ECF No. 444, is **DENIED**; and Plaintiff's motion to preclude certain references to Mr. Kaufman's Harvard Law School education, ECF No. 453, is **DENIED**.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

Attorney Alan H. Kaufman is the managing member of Kaufman LLC, a Connecticut limited liability company.[2] L.R. 56(a)(2) Statement in Opp'n to Defs.' Mot. for Summ. J. ¶¶ 1–2, ECF No. 360-1 (Apr. 10, 2021) ("Pl.'s L.R. 56(a)(2)").

On or about March 24, 2009, Mr. Kaufman signed a written agreement to work as "in house counsel" for Gotham ("Employment Agreement"). *Id.* ¶ 7; *see also* Dobin Decl. Ex. B, at 9–10, ECF No. 347-2 (Feb. 26, 2021) ("Employment Agreement").

The one-year Employment Agreement ran from March 9, 2009, to March 8, 2010, and paid Mr. Kaufman a lump sum of $15,000 and a bi-weekly salary of $4,615.38. Employment Agreement; Pl.'s L.R. 56(a)(2) ¶ 7.

In February 2010, Mr. Kaufman and Mr. Feinberg renewed the Employment Agreement under the same terms for a period of one year, from March 9, 2010, until March 8, 2011 ("Extension Agreement"). Pl.'s L.R. 56(a)(2) ¶ 12. Defs.' Reply Ex. 1, ECF No. 375-1 (June 4, 2021) ("Extension Agreement").

---

[2] The Court hereafter refers to Kaufman LLC as "Plaintiff" and Alan H. Kaufman as "Mr. Kaufman."

Under the Employment and Extension Agreements (collectively, the "Employment Agreements"), Mr. Kaufman provided legal advice and representation to Mr. Feinberg in connection with a wide range of matters. These included disputes over a life insurance policy, a bond posted in connection with an appeal to the Second Circuit, a property in the Hudson Valley, a boat, and Mr. Feinberg's investments. Pl.'s L.R. 56(a)(2) ¶ 10.

This case concerns Mr. Kaufman's work in connection with a potential investment by Mr. Feinberg, through his Catahama entity, in a food processing plant operated by FHR in Pennsylvania. *Id.* ¶ 15. Mr. Kaufman prepared and executed an agreement to be signed by Mr. Feinberg in connection with his or Catahama's investments in FHR and advised Mr. Feinberg on other transaction-related matters. *Id.* ¶ 17. But the deal eventually collapsed, and the prospect of litigation arose. *Id.* ¶ 18.

At this point, in June 2010, Mr. Feinberg allegedly had several lengthy phone calls with Mr. Feinberg. *Id.* On one of these calls, Mr. Kaufman and Mr. Feinberg allegedly agreed to a new hourly fee agreement for Mr. Kaufman's work on the FHR matter ("June 2010 Agreement"). *Id.* Mr. Kaufman alleges that he told Mr. Feinberg, "There is no way I'm doing this under [the Employment Agreements]. It's going to have to be a regular fee for service." Kaufman Dep. at 110:6–8, ECF No. 347-1 (Feb. 26, 2021). According to Mr. Kaufman, his billing rate at that time was around $525. *Id.* at 110:8–10.

On August 1, 2010, during another phone call, Mr. Feinberg allegedly agreed to honor the June 2010 Agreement, but at a lower rate. Pl.'s L.R. 56(a)(2) ¶ 20; Kaufman Dep. at 118:6–10.

According to Mr. Kaufman, the agreement was then confirmed in writing on August 11. *Id.* ¶ 23. This written confirmation consists of a fax that Mr. Kaufman to Mr. Feinberg

purportedly memorializing their oral agreement. *See id.* ¶ 20 (citing Pl.'s Cross-Mot. Ex. 8, at 357, ECF No. 360-2 (Apr. 10, 2021) ("August 11, 2010 Fax") ("You agreed to pay me independently of the [retainer] arrangement . . . . I want to be sure we agree that I will continue to be compensated independently for the continuing work. It is far too much for me to be able to absorb through the retainer, so please let me know if you have issue with continuing compensation on FHR. I will bill at the rate of $385 [per hour].")).

Mr. Feinberg, however, never signed a written contract or sent any correspondence agreeing to an hourly fee arrangement or acknowledging such an agreement. *Id.* ¶ 23.

In August and September 2010, Mr. Kaufman sent invoices to Mr. Feinberg for hourly fees that were incurred from June to August and claimed under the June 2010 Agreement. *Id.* ¶ 24. Mr. Feinberg never paid any of these amounts and never discussed the August invoices with Mr. Kaufman, although Defendants allege that Mr. Feinberg continued to pay Mr. Kaufman the biweekly amount provided by the Employment Agreements. Defs.' L.R. 56(a)(2) Statement of Facts in Opp'n to Pl.'s Cross-Mot. for Partial Summ. J. ¶¶ 5, 12, ECF No. 376 (June 4, 2021) ("Defs.' L.R. First 56(a)(2)").

In September 2010, Mr. Kaufman stopped working on the FHR matter in response to Mr. Feinberg's refusal to pay the hourly invoices. Defs.' L.R. 56(a)(2) Statement of Facts in Opp'n to Pl.'s Mot. for Summ. J. on Defs.' Affirmative Defenses, Setoff and Counterclaims ¶ 37, ECF No. 414 (Oct. 29, 2021) ("Defs.' L.R. Second 56(a)(2)"). Shortly thereafter, Mr. Feinberg terminated the Employment Agreements.

### B. Procedural History

Given the significant length of this litigation, the Court assumes familiarity with the procedural history of the case and includes only events relevant to the motions *in limine*.

On September 13, 2021, the Court issued a ruling and order granting Defendants' motion for summary judgment on Counts Two (breach of contract with respect to the hourly fee agreement), Three (quantum meruit), Four (unjust enrichment), and Five (promissory estoppel) and, with respect to the alleged oral hourly fee agreement, Count Seven (covenant of good faith and fair dealing) of the Second Amended Complaint, and denying Plaintiff's cross-motion for summary judgment as to the same counts. Ruling and Order on Cross-Mots. for Summ. J., ECF No. 387 (Sept. 13, 2021) ("First MSJ Order"). The Court ordered the parties to file supplemental briefing on Counts One (breach of contract with respect to the Employment Agreements), Seven (with respect to the Employment Agreements), and Nine (declaratory judgment), as well as Defendants' breach of contract counterclaim or related affirmative defense. *Id.* at 38–41.

On October 8, 2021, the parties cross-moved for summary judgment on Counts One and Seven. Defs.' Mot. for Summ. J., ECF No. 395 (Oct. 8, 2021); Pl.'s Mot. for Partial Summ. J. on Counts I and VII, ECF No. 399 (Oct. 8, 2021).

On October 13, 2021, Plaintiff filed a motion for summary judgment on Defendants' affirmative defenses and counterclaim. Pl.'s Mot. for Summ. J. on Defs.' Affirmative Defenses, Setoff and Counterclaims, ECF No. 402-2 (Oct. 13, 2021).

On May 17, 2022, the Court granted Plaintiff's motion for reconsideration of the Court's Ruling and Order and vacated its prior ruling as to Counts Two, Three, Four, Five, and Seven. *See* Ruling and Order on Mot. for Recons., ECF No. 422 (May 17, 2022). The Court concluded that the parol evidence rule did not bar evidence related to the alleged June 2010 hourly fee agreement, which allegedly superseded or modified the February 2010 Extension Agreement. *Id.* at 8. The Court also noted that Mr. Kaufman's sworn statements that he had reached a separate

oral agreement with Mr. Feinberg in June 2010 was sufficient to create a triable issue of fact, notwithstanding Mr. Feinberg's denial of such an agreement. *Id.* at 9.

On the same day, the Court granted Defendants' motion for partial summary judgment and denied Plaintiff's cross-motion for partial summary judgment. Ruling and Order on Cross-Mots. for Partial Summ. J., ECF No. 423 (May 17, 2022) ("Second MSJ Order"). Accordingly, the Court dismissed Count One and Count Nine, and Count Seven as it relates to the Employment Agreements. *Id.*

In the same order, the Court granted in part Plaintiff's motion for summary judgment on Defendants' affirmative defenses and counterclaim, dismissing Defendants' first, second, and fifth affirmative defenses as well as Defendants' counterclaim. *Id.*

On September 2, 2022, Defendants filed a motion to disqualify and to preclude narrative testimony and a motion to preclude certain categories of evidence. Mot. to Disqualify; Prejudicial Evid. Mot.

On September 5, 2022, Plaintiff filed a motion *in limine* to preclude references to Mr. Kaufman's alleged unauthorized practice of law. UPL Mot.

On September 9, 2022, Plaintiff filed an opposition to Defendants' motion to preclude certain categories of evidence. Pl.'s Opp'n to in Limine Mot. Regarding Relevance and Prejudice, ECF No. 449 (Sept. 9, 2022) ("Opp'n to Prejudicial Evid. Mot.").

On September 11, 2022, Plaintiff filed an opposition to Defendants' motion to disqualify and to preclude narrative testimony. Pl.'s Opp'n to in Limine Mot. Regarding Disqualification and Form of Test., ECF No. 450-1 (Sept. 11, 2022) ("Opp'n to Mot. to Disqualify").

On September 12, 2022, Plaintiff filed a motion *in limine* to limit references to his legal education. Harvard Mot.

The same day, Defendants filed an opposition to Plaintiff's motion regarding the alleged unauthorized practice of law. Obj. to Pl.'s Mot. in Limine, ECF No. 454 (Sept. 12, 2022) ("Opp'n to UPL Mot.").

On September 21, 2022, Defendants filed an opposition to Plaintiff's motion to limit references to his legal education. Obj. to Pl.'s Mot. in Limine, ECF No. 459 (Sept. 21, 2022) ("Opp'n to Harvard Mot.").

## II.   STANDARD OF REVIEW

### A.  Motions *in Limine*

Motions *in limine* provide district courts with the opportunity to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). "A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008) (citing *Luce*, 469 U.S. at 41 n.4).

A court should exclude evidence on a motion *in limine* only if the evidence is "clearly inadmissible on all potential grounds." *Levinson v. Westport Nat'l Bank*, No. 3:09-cv-1955 (VLB), 2013 WL 3280013, at *3 (D. Conn. June 27, 2013) (internal quotation marks omitted). The court also retains discretion to "reserve judgment until trial, so that the motion is placed in the appropriate factual context." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 643 F. Supp. 2d 471, 476 (S.D.N.Y. 2009) (internal quotation marks omitted).

### B.  Motion to Disqualify

"The authority of federal courts to disqualify attorneys derives from their inherent power to 'preserve the integrity of the adversary process.'" *Hempstead Video, Inc. v. Inc. Vill. of Valley*

*Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (quoting *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)). In determining whether to disqualify an attorney, a court must balance "a client's right freely to choose his counsel" against "the need to maintain the highest standards of the profession." *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978).

Motions to disqualify are disfavored, particularly because they are "often interposed for tactical reasons." *Bennett Silvershein Assocs. v. Furman*, 776 F. Supp. 800, 802 (S.D.N.Y. 1991) (quoting *U.S. Football League v. Nat'l Football League*, 605 F. Supp. 1448, 1452 (S.D.N.Y. 1985)). To "guard against the tactical use of motions to disqualify counsel," such motions are subject to "fairly strict scrutiny." *Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009). A court will order disqualification only "in the rare circumstance where an attorney's conduct 'poses a significant risk of trial taint.'" *Tyco Healthcare Grp. LP v. Ethicon Endo-Surgery, Inc.*, No. 3:10-cv-00060 (JBA), 2011 WL 12910725, at *5 (D. Conn. Dec. 30, 2011) (quoting *Arista Records LLC v. Lime Group LLC*, No. 06-CV-5936 KMW, 2011 WL 672254 (S.D.N.Y. Feb. 22, 2011)).

The moving party bears the "the heavy burden of proving facts required for disqualification." *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 794 (2d Cir. 1983). If, however, the moving party presents sufficient facts, "any doubt is to be resolved in favor of disqualification." *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975).

## III.   DISCUSSION

Defendants have filed (1) a motion to disqualify Mr. Kaufman from serving as trial counsel or, alternatively, to prevent him from testifying in a narrative form; and (2) a motion to preclude certain categories of testimony. Mot. to Disqualify; Prejudicial Evid. Mot. Plaintiff has filed (1) a motion to preclude references to Defendants' allegations that Mr. Kaufman engaged in

the unauthorized practice of law; and (2) a motion to limit references to Mr. Kaufman's Harvard Law School education. UPL Mot.; Harvard Mot.

The Court will address each of these motions in turn.

### A. Defendants' Motion to Disqualify and to Preclude Narrative Testimony

Defendants seek to disqualify Mr. Kaufman from serving as trial counsel under the witness-advocate rule, which generally prevents a lawyer who will be called as a witness on behalf of a client from representing that client at trial. Mot. to Disqualify at 3. Alternatively, if Mr. Kaufman is permitted to serve as trial counsel, Defendants argue that he should not be permitted to testify in narrative form. *Id.* at 5.

#### 1. The Witness-Advocate Rule

The witness-advocate rule applies when a lawyer who is representing a client in pending or contemplated litigation may be called to testify as a witness in that litigation. Under District of Connecticut Local Rule of Civil Procedure 83.13, a lawyer shall not accept employment in contemplated litigation "if he or she knows or it is obvious that he or she . . . ought to be called as a witness" in the matter. D. Conn. L. Civ. R. 83.13(a). If, after undertaking employment, a lawyer learns that he or she ought to be called as a witness on behalf of the client, the lawyer "shall withdraw from the conduct of the trial." D. Conn. L. Civ. R. 83.13(b).

This rule is subject to several exceptions. A lawyer who is called as a witness may continue to represent the client if the testimony will relate (1) "solely to an uncontested matter"; (2) "solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition"; or (3) "solely to the nature and value of the legal services rendered in the case." D. Conn. L. Civ. R. 83.13(a). Moreover, a court may permit a lawyer to serve as trial counsel when another lawyer in the lawyer's firm is likely to be called as a witness "if

disqualification of the lawyer would work substantial hardship on the client and permitting the lawyer to act as an advocate would not cause prejudice to opposing parties." D. Conn. L. Civ. R. 83.13(c).

The witness advocate rule is designed to preserve the integrity of the judicial process by avoiding situations in which (1) "the lawyer might appear to vouch for his own credibility"; (2) the lawyer's role as a witness forces opposing counsel to "cross-examine her lawyer-adversary and attempt to impeach his credibility"; (3) the testifying lawyer might appear to "distort[] the truth as a result of bias in favor of his client"; and (4) "the line between argument and evidence may be blurred" for the jury by the lawyer's performance of different roles. *Murray*, 583 F.3d at 178.

A court must balance these risks to the integrity of the judicial process against a party's "well-recognized and entirely reasonable interest in securing counsel of their choice." *Id.* at 180. In addition to depriving a party of its first-choice counsel, disqualification forces a party to spend time and money "to bring new counsel to the state of readiness" that current counsel has developed. *Id.* The court must consider the effect on other actors as well: the delay and uncertainty caused by disqualification impacts prospective jurors, other litigants, and the public at large, all of whom have an interest in "the swift and orderly administration of justice." *Id.*

Here, Defendants argue that Mr. Kaufman should be disqualified because his testimony will be essential to the trial, and none of the exceptions to Local Rule 83.13(a) apply. *See* Mot. to Disqualify at 5. They rely on a similar case in which a plaintiff law firm was represented by its principal attorney, whose role was "akin to a party acting *pro se*," and who would have been required to testify at trial. *See Lemberg Law, LLC v. eGeneration Mktg., Inc.*, No. 3:18-cv-570 (CSH), 2020 WL 2813177, at *25 (D. Conn. May 29, 2020). In *Lemberg Law*, the court

disqualified the principal attorney from acting as trial counsel for his firm because his dual role at trial might "taint" the proceedings and because a jury might view him "'possessing special knowledge of [the] case' and therefore accord his testimony 'undue weight.'" *Id.* at *22 (alteration in original) (quoting *MacArthur v. Bank of New York*, 524 F. Supp. 1205, 1208 (S.D.N.Y. 1981)). Defendants contend that the same concerns should prevent Mr. Kaufman from acting as trial counsel in this case. *See* Mot. to Disqualify at 4.

Plaintiff argues that the Court can permit Mr. Kaufman to serve as both trial counsel and witness under Local Rule 83.13(c) because disqualification would cause Plaintiff substantial hardship. *See* Opp'n to Mot. to Disqualify at 1–2. Plaintiff contends that it would be forced to incur substantial delay and expense in obtaining new trial counsel at this late stage. *See id.* at 7. Plaintiff also points out that Defendants have filed this motion on the eve of trial even though it has been clear for years that Mr. Kaufman would be required to testify. *See id.* at 2. On the other side of the equation, Plaintiff argues that there would be no prejudice to Feinberg from Mr. Kaufman's dual role as witness and advocate. *See id.* at 10.

The Court agrees.

The Second Circuit has warned that the witness-advocate rule lends itself to precisely the type of "opportunistic abuse" evident here. *Murray*, 583 F.3d at 178. This litigation has been ongoing for nine years, and Mr. Kaufman, the sole member of Plaintiff Kaufman LLC, has served as counsel the entire time. As Plaintiff points out, it has also been clear for years that Mr. Kaufman's testimony regarding the alleged oral agreement with Mr. Feinberg would be essential to Plaintiff's case at trial. Just as in *Murray*, Defendants' "lengthy and unexcused delay in bringing [their] motion to disqualify weighs against disqualification." *Id.* at 180. This delay also

distinguishes our case from *Lemberg Law*, in which the defendant sought to disqualify the potential witness-advocate at the motion to dismiss stage.

Plaintiff argues that Mr. Kaufman may serve as trial counsel under the exception enumerated in Local Rule 83.13(c). That exception, however, applies only when "another lawyer in the lawyer's firm" is likely to be called as a witness. It therefore does not align squarely with the circumstances of this case. Nonetheless, the Court is guided by the principles of subsection (c) in considering Defendants' motion to disqualify. *Cf. Whitserve, LLC v. GoDaddy.com, Inc.*, No. 3:11-cv-00948 (JCH), 2011 WL 13238505, at *1–2 (D. Conn. Dec. 15, 2011) (evaluating a motion to disqualify in light of the purpose of the witness-advocate rule even though, "under a literal reading of Local Rule 83.13," the lawyer-witness's firm should be disqualified (citing *Bottaro v. Hatton Assocs.*, 680 F.2d 895, 897 (2d Cir. 1982))).

Disqualification would also cause Plaintiff substantial prejudice. Because Mr. Kaufman is effectively acting as a *pro se* party, hiring new trial counsel would require additional expense. It would also take time for new counsel to prepare for trial, further delaying a case that has been ongoing for more than nine years. When considering motions to disqualify, the Second Circuit has "attached considerable significance" to the "delay and additional expense created by substitution of counsel." *Shaw & Levine v. Gulf & W. Indus., Inc. (In re Bohack Corp.)*, 607 F.2d 258, 263 (2d Cir. 1979).

There is little difference between Mr. Kaufman and a party acting *pro se*, who is permitted to act as both witness and advocate. *See Lemberg Law*, 2020 WL 2813177, at *25. Defendants emphasize that Mr. Kaufman is not himself named as a plaintiff, but they do not explain the significance of this distinction. *See* Mot. to Disqualify at 1. Mr. Kaufman is the sole member of the LLC that bears his name, and his testimony will relate only to his legal practice.

Thus, this case is distinct from *Whitserve*, in which the court granted a motion to disqualify because the lawyer-witness was both a member of the plaintiff LLC and an attorney employed by the firm representing the plaintiff LLC at trial. *See* 2011 WL 13238505, at *2. Unlike in *Whitserve*, there is little risk that Mr. Kaufman "will more likely be viewed by the jury as an attorney in plaintiff counsel's firm, not as the plaintiff in the case." *Id.*

Accordingly, Defendants' have not met their "heavy burden" to show that Mr. Kaufman must be disqualified as trial counsel.

### 2. Narrative Testimony

Federal Rule of Evidence 611 directs district courts to "exercise reasonable control over the mode and order of examining witnesses and presenting evidence." Fed. R. Evid. 611(a). This rule encompasses "such concerns as whether testimony shall be in the form of a free narrative or responses to specific questions." Fed. R. Evid. 611 advisory committee's notes on 1972 proposed rules. Under Rule 611, "a trial judge has broad discretion in deciding whether or not to allow narrative testimony." *United States v. Young*, 745 F.2d 733, 761 (2d Cir. 1984).

Federal Rule of Evidence 103 also provides that a court must conduct a jury trial "so that inadmissible evidence is not suggested to the jury by any means." Fed. R. Evid. 103(d). Narrative testimony may pose an obstacle to that goal by permitting a witness to offer inadmissible testimony before the other party has an opportunity to object. A question-and-answer ("Q&A") format can "assure opposing counsel the opportunity to lodge any objection" before the witness answers. *United States v. Beckton*, 740 F.3d 303, 306 (4th Cir. 2014).

Here, Defendants contend that Mr. Kaufman must be precluded from offering narrative testimony in order to preserve this ability to object to inadmissible testimony. *See* Mot. to Disqualify at 6. They argue that narrative testimony from Mr. Kaufman would confuse and

mislead the jury by introducing facts and issues that are beyond the scope of the jury's task in this case. *See id.* at 7. Defendants also point out that Mr. Kaufman is not a *pro se* litigant unfamiliar with trial procedures to whom the Court should provide greater leeway. *See id.* at 7–8.

Plaintiff argues that Mr. Kaufman is effectively a *pro se* litigant and should be permitted to conduct the trial as such. *See* Opp'n to Mot. to Disqualify at 7. Plaintiff also contends that a self-Q&A format will confuse the jury and deaden the impact of Mr. Kaufman's testimony. *See id.* at 8–9. In response to Defendants' concern about their ability to object, Plaintiff argues that defense counsel will be able to anticipate where Mr. Kaufman's testimony is going and make timely objections to potentially inadmissible evidence. *See id.* at 11.

The Court disagrees.

As the various motions *in limine* illustrate, there is substantial disagreement between the parties about the scope of admissible evidence in this case. The best way to ensure the orderly conduct of the trial and prevent the jury from hearing inadmissible evidence is to require Mr. Kaufman to testify in a Q&A format, just as any other witness would. *See Beckton*, 740 F.3d at 306 (concluding that it was "eminently reasonable" for the district court to require "Beckton, like all other witnesses, to testify in [a Q&A] manner").

The fact that Mr. Kaufman is effectively a *pro se* litigant does not change this analysis. Courts in this District, as well as in other Circuits, have precluded *pro se* parties from testifying in narrative format for same reasons at issue here. *See, e.g.*, *Duverge v. United States*, No. 3:10-cv-01922 (JGM), 2018 WL 619497, at *3 (D. Conn. Jan. 30, 2018) (requiring a *pro se* plaintiff to "pose a question, give defendant an opportunity to object before answering, and then answer"); *Beckton*, 740 F.3d at 306 ("Accordingly, the district court was well within the proper exercise of [its] discretion in denying Beckton's request[] that, as a pro se [litigant], he be

permitted to testify in narrative form." (alterations in original) (internal quotation marks omitted)); *Hutter N. Tr. v. Door Cnty. Chamber of Com.*, 467 F.2d 1075, 1078 (7th Cir. 1972) ("Appellant requested that, as a pro se plaintiff, he be permitted to testify in narrative from. This request was denied, and the denial was well within the proper exercise of the judge's discretion."); *United States v. Gallagher*, 99 F.3d 329, 332 (9th Cir. 1996) (upholding the district court's decision to prevent a criminal defendant from testifying in narrative form after defense counsel had finished questioning him).

Plaintiff cites no authority to the contrary. Although Plaintiff points to cases in which courts have permitted witnesses—both *pro se* litigants and otherwise—to testify in narrative form, none of these decisions establish that a court is required to permit narrative testimony. *See* Opp'n to Mot. to Disqualify at 4 (citing *Brown v. Artus*, No. 04 Civ. 3601 (DLC) (KNF), 2008 WL 9428119, at *4 (S.D.N.Y. Dec. 24, 2008); *United States v. Bentson*, 220 F. App'x 643, 646 (9th Cir. 2007); *Rosen v. Infante*, No. 82 Civ. 8149 (LBS), 1984 U.S. Dist. LEXIS 20319, at *8 (S.D.N.Y. Jan. 18, 1984); and *Chichakli v. Gerlach*, No. CIV-15-687-D, 2018 WL 3625840, at *3 (W.D. Okla. July 30, 2018)).

Accordingly, the Court will grant Defendants' motion to preclude Mr. Kaufman from testifying in narrative form.[3]

---

[3] Plaintiff objects that a Q&A format might prevent Mr. Kaufman from changing his questions in the course of his testimony. *See* Opp'n to Mot. to Disqualify at 9–10. This concern is unfounded. Precluding Mr. Kaufman from testifying in narrative form does not require him to submit a fixed list of questions to the Court in advance. It merely requires that he "pose a question, give defendant an opportunity to object before answering, and then answer." *Duverge*, 2018 WL 619497, at *3.

### B.  Defendants' Motion to Preclude Prejudicial and Irrelevant Evidence

#### 1.  Mr. Feinberg's Wealth

Federal Rule of Evidence 403 permits courts to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

"Evidence of wealth . . . is generally inadmissible in trials not involving punitive damages." *Tesser v. Board of Educ.*, 370 F.3d 314, 318 (2d Cir. 2004) (quoting *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 266 (2d Cir. 1999)). Such evidence should typically be excluded because it "can be taken as suggesting that the defendant should respond in damages because he is rich." *Reilly*, 181 F.3d at 266 (quoting *Koufakis v. Carvel*, 425 F.2d 892, 902 (2d Cir. 1970)). On the other hand, wealth evidence "may be admitted where other safeguards are employed such as limiting instructions or restrictions confining . . . references to that wealth." *United States v. Quattrone*, 441 F.3d 153, 187 (2d Cir. 2006).

Here, Defendants argue that the issues in this case are limited to the existence of an oral contract between Mr. Feinberg and Mr. Kaufman and do not involve punitive damages. *See* Prejudicial Evid. Mot. at 2–3. As a result, they contend, evidence regarding Mr. Feinberg's wealth should be precluded. *See id.*

Plaintiff argues that wealth evidence may be admissible even when punitive damages are not at issue, such as to show an investor's sophistication.[4] *See* Opp'n to Prejudicial Evid. Mot. at 6 (citing *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 236 (2d Cir. 2006)). In this case, Plaintiff

---

[4] Kaufman also argues that wealth evidence is admissible because the Second Amended Complaint asserts a claim for punitive damages. *See* Opp'n to Prejudicial Evid. Mot. at 5. But the Court dismissed Kaufman's punitive damages count in a December 9, 2015, ruling and order. *See* Ruling on Defs.' Mots. to Dismiss, ECF No. 113 (Dec. 9, 2015). Accordingly, wealth evidence is not admissible for the purpose of determining punitive damages.

contends that wealth evidence is necessary to explain the professional relationship between Mr. Kaufman and Mr. Feinberg. *See id.* at 7. Plaintiff also contends that Mr. Feinberg's wealth is relevant to Mr. Kaufman's state of mind, including his concerns about Mr. Feinberg's prior financial dealings. *See id.* at 8. According to Plaintiff, excluding the wealth evidence would present the jury with a distorted picture of the facts in this case. *See id.* at 9.

The Court disagrees, for now.

As a general matter, Mr. Feinberg's wealth is irrelevant to the underlying issue in this case: whether Mr. Feinberg agreed to pay hourly fees for Mr. Kaufman's work on the FHR litigation. Even if Mr. Feinberg's prior litigation conduct and other business dealings affected Mr. Kaufman's state of mind in seeking an hourly fee arrangement, Plaintiff has not explained how these prior dealings are relevant in determining whether Mr. Feinberg accepted such an arrangement. Thus, this case is unlike *Crigger*, in which the plaintiffs' wealth was relevant to their sophistication as investors, and their sophistication determined whether they had reasonably relied on the defendants' allegedly fraudulent misrepresentations. *See* 443 F.3d at 236.

Plaintiff has offered no reason why the usual risk of unfair prejudice—that the jury might hold the defendant liable because he can afford to pay damages—does not apply in this case. In light of this risk, specific wealth evidence about Mr. Feinberg will not be admitted. *See McBeth v. Porges*, No. 15-CV-2742 (JMF), 2018 WL 5997918, at *3 (S.D.N.Y. Nov. 15, 2018) (admitting evidence that the plaintiff was wealthy and "had 'millions' of dollars in investments" but excluding "more specific evidence of McBeth's wealth (including but not limited to the precise size of his investments or the amount of money that he earned from the sale of a company)").

Because the admissibility of wealth evidence depends on the context in which it is introduced, the Court will defer ruling on this issue. Accordingly, Defendants' motion to preclude this evidence will be denied without prejudice to renewal consistent with this order.

## 2. Attorney's Fees in this Case and Other Matters

Defendants contend that any evidence related to attorney's fees should be precluded because it is irrelevant and prejudicial. *See* Prejudicial Evid. Mot. at 3. They argue that the amount of attorney's fees paid in this litigation or other cases is irrelevant to the question of whether Mr. Feinberg agreed to an hourly fee arrangement. *See id.* at 4.

As with the wealth evidence, Plaintiff argues that evidence related to attorney's fees in the FHR litigation is relevant to Mr. Kaufman's state of mind. *See* Opp'n to Prejudicial Evid. Mot. at 9. According to Plaintiff, the jury would benefit from learning that Mr. Kaufman refused to work on a fixed fee of $10,000 per month because his hourly fees would have exceeded $3,000,000 at their fair market value. *See id.* This evidence, Plaintiff contends, is relevant because it affected Mr. Kaufman's decision to negotiate the alleged hourly fee arrangement and eventually to resign over Mr. Feinberg's alleged non-payment. *See id.*

The Court agrees, in part.

Plaintiff does not challenge Defendants' argument that references to attorney's fees incurred in this litigation are inadmissible. As a result, the Court will preclude such evidence. *See Sparano v. JLO Auto., Inc.*, No. 3:19-CV-00681 (VAB), 2022 WL 266159, at *13 (D. Conn. Jan. 29, 2022) (precluding references to attorney's fees under Rule 403, "as such references may confuse the jury about the ultimate issues to be decided").

References to attorney's fees in the FHR matter, however, may have some probative value. The gap between Mr. Kaufman's $10,000 per month earnings under the Employment

Agreements and the hourly market value of Mr. Kaufman's work may have affected his state of mind in seeking an hourly fee arrangement with Mr. Feinberg. But once again, Plaintiff has not established that this attorney's fees evidence is relevant to whether Mr. Feinberg agreed to pay Mr. Kaufman at this hourly rate. Plaintiff has pointed to no evidence indicating that Mr. Feinberg was concerned about underpaying Mr. Kaufman relative to his hourly rate. Without such evidence, the value of the attorney's fees in the FHR matter sheds little light on Mr. Feinberg's state of mind or his actions with respect to the alleged hourly fee arrangement.[5]

Balanced against this limited probative value is the risk that the jury might side with Plaintiff simply because they believe that Mr. Kaufman agreed to a bad deal and Mr. Feinberg took advantage of him. *Cf. Fournier v. Erickson*, 242 F. Supp. 2d 318, 330 (S.D.N.Y. 2003) (excluding under Rule 403 evidence of the defendants' sizeable profits when it was "likely to significantly prejudice the jury" in determining whether those profits were the result of wrongful conduct).

Accordingly, the Court will grant in part and deny in part Defendants' motion to preclude attorney's fees evidence. Plaintiff may introduce in general terms Mr. Kaufman's rationale for seeking an hourly fee arrangement. With respect to all other attorney's fees evidence, including the specific alleged value of Mr. Kaufman's hourly market rate in the FHR litigation, the risk of unfair prejudice substantially outweighs the limited probative value under Rule 403.

---

[5] In the summary judgment briefing, Plaintiff pointed to statements in Mr. Feinberg's deposition indicating that Mr. Feinberg viewed the September 7 termination letter as a negotiating tactic and that he wanted to keep Mr. Kaufman as his lawyer. Pl.'s Reply to Defs.' Suppl. Mem. re Counts I and VII at 5–7, ECF No. 408 (Oct. 22, 2021). But the termination letter does not establish that Mr. Feinberg was concerned that the failure to pay more than the $10,000 per month Employment Agreements rate might cause Mr. Kaufman to quit. To the contrary, Plaintiff argued that the termination letter was an attempt to reduce Mr. Kaufman's fees even further. *See id.* at 7 ("Feinberg refused to continue the retainer unless Kaufman would agree that the intensive work for the preceding months would be free of charge.").

### 3.  Mr. Feinberg's Alleged Failure to Pay Fees in Other Matters

Defendants argue that evidence of Mr. Feinberg's alleged failure to pay his debts or pay other attorneys should be precluded under Rule 403 and Rule 404(b).

Rule 404(b) provides that evidence of any other crime, wrong, or act "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1).

According to Defendants, the central issue in this case is whether Mr. Feinberg promised to pay Mr. Kaufman at an hourly rate. They contend that Mr. Feinberg's alleged failure to pay fees in the past has little probative value on this issue and would unfairly prejudice Defendants. *See* Prejudicial Evid. Mot. at 5. Defendants also argue that failure-to-pay evidence is inadmissible under Rule 404(b) to the extent it is introduced to show that Mr. Feinberg failed to pay Mr. Kaufman.

Plaintiff argues that Mr. Feinberg's failure to pay in the past is relevant not to show Mr. Feinberg's propensity for non-payment but to show Mr. Kaufman's state of mind in refusing to handle the FHR litigation on a fixed monthly fee. *See* Opp'n to Prejudicial Evid. Mot. at 10. Plaintiff also contends that Mr. Feinberg's history is relevant to Mr. Kaufman's decision to stop working for Mr. Feinberg in September 2010. *See id.* at 11.

The Court disagrees.

As with the attorney's fees evidence, Plaintiff argues only that this evidence is relevant to why Mr. Kaufman "insisted on hourly compensation, or he would resign." *Id.* Although Mr. Kaufman's rationale for seeking an hourly fee arrangement has some probative value in this case, it sheds little light on whether Mr. Feinberg agreed to such an arrangement. Plaintiff has pointed to no evidence indicating that Mr. Kaufman's state of mind affected Mr. Feinberg's

decision regarding the hourly fee proposal. As Defendants correctly point out, this case centers

on whether Mr. Feinberg agreed to the alleged hourly fee agreement, not whether Mr. Kaufman

offered it. Accordingly, the probative value of the attorney's fees evidence is limited.

This probative value "is substantially outweighed by the burden that the admission of this

evidence would place on [Defendants] to explain the circumstances at issue in [the prior fee

disputes], by the waste of time that would accompany such explanations, and by the danger that

admission of this evidence will create unfair prejudice against [Defendants]." *Dodson v. CBS*

*Broad. Inc.*, 423 F. Supp. 2d 331, 334 (S.D.N.Y. 2006) (internal quotation marks omitted). The

allegations in Plaintiff's Complaint that are quoted in Defendants' motion reflect an attempt to

paint Mr. Feinberg as someone who habitually refuses to honor his financial obligations. *See*

Second Am. Compl. ¶ 147, ECF No. 67-1 (Dec. 3, 2014) ("Feinberg has a decades long history

of using his wealth to coerce and exploit vendors, employees, [and others] by making

commitments . . . and then refusing to compensate them in accord with agreements to do so.");

¶ 156 ("Consistent with the behavior towards service providers and professionals in his nearly

four decades of litigation, Feinberg acted in bad faith towards Kaufman."); ¶ 160 ("Feinberg's

lengthy history of indifference to his financial obligations to others and persistent refusal to pay

bills for products and services . . . is a pattern of conduct that is unconscionable.").

Plaintiff does not disclaim such a motive, arguing that if the failure-to-pay evidence

harms Mr. Feinberg, it is "because of the man he was." *See* Opp'n to Prejudicial Evid. Mot. at

12. But this type of inference—from past behavior, to character, to future behavior—is precisely

what Rule 404(b) condemns. It would be unfairly prejudicial to admit the failure-to-pay evidence

because it "risks enflaming the jury and painting [Mr. Feinberg] as someone with a propensity"

to renege on his contractual commitments. *United States v. Tagliaferro*, 530 F. Supp. 3d 295,

299 (S.D.N.Y. 2021). Mr. Kaufman's depiction of Mr. Feinberg could unfairly influence the jury's evaluation of whether he failed to honor an agreement in this particular case.

Accordingly, Defendants' motion to preclude evidence related to Mr. Feinberg's alleged failure to pay debts or pay attorney's fees in other matters under Rule 403 will be granted.

### 4.   The Outcome of Grievances Filed Against Mr. Kaufman

Before this litigation, Mr. Feinberg's attorneys filed complaints with state bar grievance committees accusing Mr. Kaufman of the unauthorized practice of law. *See* Second MSJ Order at 29. Defendants now seek to preclude evidence regarding the dismissal of these grievances. *See* Prejudicial Evid. Mot. at 5. They contend that this evidence is irrelevant, unduly prejudicial, and likely to confuse the jury because the jury might "feel compelled to conform their verdict to the conclusion of the disciplinary authorities who reviewed the grievances." *Id.*

In response, Plaintiff argues that it would be manifestly unfair to preclude the outcomes of the grievance proceedings and that the Court should take judicial notice of those proceedings. *See* Opp'n to Prejudicial Evid. Mot. at 14.

The Court disagrees.

Whether or not the Court can properly take judicial notice of the grievance proceedings, introducing evidence of those proceedings risks confusing the jury about their role in this trial. The Second Circuit has noted that, although the findings of state administrative agencies may be admissible as exceptions to hearsay, a district court "generally has discretion to exclude such hearsay on other grounds, such as where the evidence's probative value is substantially outweighed by the danger of unfair prejudice." *Paolitto v. John Brown E. & C., Inc.*, 151 F.3d 60, 64 (2d Cir. 1998). Here, the Court has already determined that the grievance committee decisions have no preclusive effect in this litigation. *See* Second MSJ Order at 29–30.

Accordingly, it is up to the jury to decide whether the evidence shows that Mr. Kaufman's conduct amounted to the unauthorized practice of law.

The Second Circuit has held that a district court errs when it admits at trial evidence of an arbitration board's prior decision on claims similar to those at issue in the trial. In this circumstance, the jury might feel "a strong compulsion to conform their verdict to the conclusion of the Arbitration Board 'experts.'" *Arlio v. Lively*, 474 F.3d 46, 53 (2d Cir. 2007). The grievance evidence here presents the same risk that the jury would view the state bar committees as experts and adopt their determination rather than exercising independent judgment. *See McClain v. Pfizer Inc.*, No. 3:06-cv-01795 (VLB), 2010 WL 746777, at *2 (D. Conn. Mar. 1, 2010) (excluding evidence of OSHA's prior decision on the plaintiff's whistleblower complaint on the grounds that such evidence "invades the exclusive province of the jury").

Plaintiff argues that *Arlio* does not apply because, unlike this case, it did not involve the decision of a judicial body. *See* Opp'n to Prejudicial Evid. Mot. at 14. But the fact that grievance committees may be more similar to courts of law does not make it more acceptable for jurors to conform their verdict to the findings of these committees. In fact, a grievance committee's greater authority only makes it more likely that a jury will be influenced by the committee's evaluation of the facts.

Nor can *Arlio* be distinguished because the arbitrators in that case did not consider the identical claim that was presented to the jury. *See* 474 F.3d at 52. Even if the grievance committees evaluated Mr. Kaufman's alleged unauthorized practice of law under the same standards that apply to Defendants' counterclaim in this case, the evidence of the committee's decision would nonetheless intrude on the "exclusive province of the jury" to weigh the evidence under the applicable legal standards. *McClain*, 2010 WL 746777, at *2.

Accordingly, Defendants' motion to preclude evidence related to the grievance committee proceedings under Rule 403 will be granted.

## C.  Plaintiff's Motion to Preclude Argument of the Unauthorized Practice of Law Claim

Plaintiff argues that Defendants should be precluded from arguing in their opening statement that Mr. Kaufman engaged in the unauthorized practice of law. Plaintiff contends that Defendants have failed to put forward sufficient evidence to justify making this argument in their opening statement. *See* UPL Mot. at 7. In Plaintiff's view, unauthorized practice of law is so serious a charge that the mere argument of Defendants' claim will taint the jury's view of Mr. Kaufman's testimony and conduct. *See id.* at 4.

In response, Defendants argue that they may address the alleged unauthorized practice of law in their opening statement as long as they have a good faith belief that evidence to establish this claim will be admissible. *See* Opp'n to UPL Mot. at 3. Defendants contend that they meet this standard. Defendants also suggest that the Court may address any concerns about the prejudicial effect of the unauthorized practice of law argument by instructing the jury that opening statements are not evidence. *See id.*

The Court agrees.

Plaintiff cites no authority for the principle that a party must establish an evidentiary foundation for an argument the party makes in its opening statement. And Plaintiff's proposed rule has little force when the Court already determined that there is a triable issue of fact as to Defendants' unauthorized practice of law claim. *See* Second MSJ Order at 34 ("Mr. Kaufman's testimony, therefore, in combination with contemporaneous evidence of Mr. Kaufman's communications with Mr. Feinberg and the Bank's counsel, create a genuine issue of material

fact as to whether, before Mr. Feinberg filed suit against the Bank, Mr. Kaufman engaged in the unauthorized practice of law in New York." (citations omitted)). Plaintiff's argument that there is "*no evidence*" supporting Defendants' claim, UPL Mot. at 4, is effectively an attempt to reopen the Court's denial of Plaintiff's motion for summary judgment.

Moreover, as Defendants point out, district courts in other Circuits have rejected the argument that Plaintiff makes here. *See United States v. Hearst*, 412 F. Supp. 877, 880 (N.D. Cal. 1976) (finding "no irreparable prejudice to the Government in permitting defense counsel to" reference expert testimony in his opening statement even though defense counsel "may or may not be able to lay the proper foundation for the admission of such evidence"); *Stephen v. Home Depot U.S.A., Inc.*, No. 18 C 130, 2021 WL 4980085, at *3 (N.D. Ill. Oct. 6, 2021) ("The Court rejects Defendants' argument that Stephen cannot publish any demonstrative or photographic exhibits during opening statements because she will have not laid a foundation for them at that time. The Court will instruct the jury that opening statements are not evidence, which should cure any potential prejudice . . . ." (citation omitted)).

### D.  Plaintiff's Motion to Preclude Argument Based on Mr. Kaufman's Harvard Law School Education

Plaintiff seeks to limit the extent to which Defendants can refer to Mr. Kaufman's educational background at trial. Specifically, Plaintiff argues that his Harvard Law School education "is not legitimate as part of argument by counsel about such central issues in the case, such as whether or not Kaufman and Feinberg reached an agreement as to his compensation in the Fresh Harvest River case." Harvard Mot. at 3. In Plaintiff's view, his legal education is irrelevant to these issues, and members of the jury may view an association with Harvard in a negative light. *See id.*

In response, Defendants argue that they should be able to strategically use relevant admissible evidence as they see fit. *See* Opp'n to Harvard Mot. at 1–2. They contend that Mr. Kaufman's legal background is relevant to, among other things, his credibility as a witness to the alleged hourly fee agreement.

The Court agrees.

Mr. Kaufman's education is an important aspect of his legal experience, and this experience is relevant to the jury's evaluation of his conduct as Mr. Feinberg's attorney and his credibility in describing that conduct. Plaintiff cites no authority for the proposition that a Court can impose the type of limit Plaintiff seeks on how Defendants may use relevant admissible evidence. Plaintiff also has not established that the prejudice he alleges based on the public perception of Harvard would so substantially outweigh the relevance of his legal education that Defendants' anticipated arguments must be precluded.

Accordingly, Plaintiff's motion to preclude argument based on Mr. Kaufman's Harvard Law School education will be denied.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to disqualify and to preclude narrative testimony, ECF No. 442, is **GRANTED in part** and **DENIED in part**. Mr. Kaufman is not disqualified from serving as trial counsel, but Mr. Kaufman will be required to testify in a question-and-answer format.

Defendants' motion to preclude prejudicial and irrelevant evidence, ECF No. 443, is **GRANTED in part** and **DENIED in part**. Defendants' motion to preclude evidence of Mr. Feinberg's wealth is denied without prejudice to renewal at trial. Attorney's fees evidence may be admitted to show generally why Mr. Kaufman sought an hourly fee arrangement but is

otherwise precluded. Defendants' motion to preclude evidence of Mr. Feinberg's alleged failure to pay legal fees is granted. Defendant's motion to preclude evidence of the outcome of state bar grievance committee decisions is also granted.

Plaintiff's motion to preclude prejudicial argument prior to establishment of a foundation regarding Mr. Kaufman's alleged unauthorized practice of law, ECF No. 444, is **DENIED**.

Plaintiff's motion to preclude argument on irrelevant and prejudicial evidence related to his Harvard Law School education, ECF No. 453, is **DENIED**.

**SO ORDERED** at Bridgeport, Connecticut, this 24th day of October, 2022.

   /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge