UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KAUFMAN LLC,<br>*Plaintiff*,<br><br>v.<br><br>ESTATE OF HERBERT FEINBERG; et al.,<br>*Defendants*. | No. 3:13-cv-01259 (VAB) |

**RULING AND ORDER ON MOTIONS FOR A DIRECTED VERDICT**

After the close of evidence, both Plaintiff and Defendants moved for a directed verdict under Federal Rule of Civil Procedure 50(a) on Defendants' unauthorized practice of law counterclaim. Pl.'s Mot. for Directed Verdict, ECF No. 478 ("Pl.'s Mot."); Defs.' Mem. of Law in Supp. of Mot. for Directed Verdict, ECF No. 480 ("Defs.' Mem.").

For the following reasons, Plaintiff's motion for a directed verdict is **GRANTED** and Defendants' motion is **DENIED.**

As a result, judgment for Plaintiff will enter on the counterclaim and on Defendants' closely related affirmative defense to Plaintiff's claim as well.

**I.    BACKGROUND**

The Court assumes the parties' familiarity with the factual background and procedural history. *See* Ruling and Order on Motions in Limine, ECF No. 461.

**II.   STANDARD OF REVIEW**

The standard governing a motion for judgment as a matter of law is "appropriately strict." *Stubbs v. Dudley*, 849 F.2d 83, 85 (2d Cir. 1988). The motion "may only be granted if there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the

movant is so overwhelming that reasonable and fair minded [persons] could not arrive at a verdict against [it]." *Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 112 (2d Cir. 2015) (quoting *Brady v. Wal–Mart Stores, Inc.*, 531 F.3d 127, 133 (2d Cir. 2008)). The court must deny the motion "unless, viewed in the light most favorable to the nonmoving party, the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached." *Cobb v. Pozzi*, 363 F.3d 89, 101 (2d Cir. 2004) (internal quotation marks omitted).

### III. DISCUSSION

In their affirmative defense and counterclaim, Defendants argue that Mr. Kaufman engaged in the unauthorized practice of law with respect to the FHR matter between February and July 2010. During this period, Mr. Kaufman performed work relating to FHR in both New York and Connecticut, although he was not a member of either state's bar. Thus, the Court must determine whether Mr. Kaufman's work on the FHR matter amounted to the practice of law in these states.

In New York, the practice of law "includes the rendering of legal advice as well as appearing in court and holding oneself out to be a lawyer." *El Gemayel v. Seaman*, 533 N.E.2d 245, 248 (N.Y. 1988) (citing *Spivak v. Sachs*, 211 N.E.2d 329, 330 (N.Y. 1965)). The preparation of contracts and other legal documents also qualifies as the practice of law. *In re Roel*, 144 N.E.2d 24, 26 (1957) ("[W]hen legal documents are prepared for a layman by a person in the business of preparing such documents, that person is practicing law . . . .").

Connecticut's definition of the unauthorized practice of law is similar. *See Statewide Grievance Committee v. Patton*, 239 Conn. 251, 254 (1996) ("The practice of law . . . embraces the

giving of legal advice on a variety of subjections and the *preparation of legal instruments . . . .*" (internal quotation marks omitted)).

Here, Defendants contend that Mr. Kaufman engaged in the practice of law because he "held himself out as Mr. Feinberg's lawyer to Attorney Paul McGrath, who represented First Commonwealth Bank in connection with the FHR matter, provided legal advice to Mr. Feinberg, engaged in communications to and on behalf of Mr. Feinberg regarding the FHR matter, drafted contracts and correspondence, and attended meetings on behalf of Mr. Feinberg in New York." Defs.' Mem. at 5–6. In support of their arguments, Defendants point to e-mails and other correspondence sent either to or from Mr. Kaufman during the relevant period. *Id.*

Plaintiff argues that Mr. Kaufman properly consulted with local counsel several times on issues that arose in the FHR matter before litigation began in July 2010. Pl.'s Mot. at 2–3. Plaintiff also contends that the pre-litigation work that Mr. Kaufman did on the FHR matter was primarily business-related and not of a legal nature. *Id.* at 3–4.

The Court agrees.

Defendants have not established that Mr. Kaufman's conduct qualified as the unauthorized practice of law. Some of Defendants' evidence shows that Mr. Kaufman corresponded repeatedly about the potential FHR deal with an attorney for the bank. *See* Defs.' Exs. N, P, O, S. But these documents merely show that Mr. Kaufman was acting as Mr. Feinberg's representative or intermediary in a business deal. The only case that Defendants cite for the proposition that it is unlawful for a non-lawyer to "to correspond with others on behalf of a client" is *In re Brandes*, 65 N.E.3d 678, 679 (N.Y. 2016). Defs.' Mem. at 3. *Brandes*, however, involved a disbarred attorney who would "speak to an attorney over the telephone or by email, rendering legal advice or an opinion about the legal problems of a particular client." *Id.* Thus, Brandes was "deemed to be performing legal services for a client," *i.e.*, any attorney with whom

3

he corresponded to provide advice. *In re Brandes*, No. 1999-07006, 2015 WL 4664743 (N.Y. App. Div. June 3, 2015). This case does not involve corresponding with others on behalf of a client and therefore does not support Defendants' position.

Furthermore, although Mr. Kaufman may have engaged with the bank's attorney as Mr. Feinberg's lawyer, there is no evidence showing that he held himself out to the public or potential clients as someone qualified to provide legal services in New York. Unauthorized practice rules are designed "not to protect the bar . . . but to protect the public." *People v. Alfani*, 125 N.E. 671, 673 (N.Y. 1919); *see also Roel*, 144 N.E.2d at 28 ("Protection of the members of the lay public of our State . . . when they seek legal advice . . . is the basis of the requirements of licensing of attorneys by the State."); *Spivak*, 211 N.E.2d at 331 ("The [unauthorized practice] statute aims to protect our citizens against the dangers of legal representation and advice given by persons not trained, examined and licensed for such work, whether they be laymen or lawyers from other jurisdictions.").

Defendants' evidence and Mr. Kaufman's testimony also show that he had some involvement in preparing contracts related to the FHR matter. But Mr. Kaufman's uncontroverted testimony shows that he consulted with local counsel in Pennsylvania in relation to the FHR transactions. Moreover, not all work in the preparation of contracts qualifies as the unauthorized practice of law. *See, e.g.*, *Duncan & Hill Realty, Inc. v. Dep't of State*, 405 N.Y.S.2d 339, 343 (1978) (noting that real estate brokers and agents who prepare contracts are not engaged in the unauthorized practice of law). Here, Defendants' evidence does not indicate the nature of Mr. Kaufman's contributions to the contract or whether they involved the exercise of legal, rather than business, judgment.

The fact that Mr. Kaufman repeatedly consulted local counsel and eventually obtained *pro hac vice* admission once the litigation was initiated in the Southern District of New York also suggests that his conduct did not qualify as the unauthorized practice of law. *See Brooks v. Cohen, Jayson & Foster, P.A.*, No. 08 CIV 4462 DAB, 2010 WL 3528919, at *4 (S.D.N.Y. Aug. 26, 2010) (permitting a Defendant attorney to recover fees for work performed prior to *pro hac vice* admission "where there is competent evidence that Defendant collaborated on a specific federal case and was actively engaged in the process of having local counsel move Defendant in *pro hac vice*").

To the extent Mr. Kaufman's pre-litigation work on the FHR matter was performed from his home in Connecticut, that work falls under Connecticut Rule of Professional Conduct 5.5(c), which permits a lawyer admitted in another United States jurisdiction to provide legal services "on a temporary basis" that is "reasonably related to a pending or potential proceeding before a tribunal in this or another jurisdiction, if the lawyer, or a person the lawyer is assisting, is authorized by law or order to appear in such proceeding or reasonably expects to be so authorized" or that is "substantially related to the legal services provided to an existing client of the lawyer's practice in a jurisdiction in which the lawyer is admitted to practice." Defendants do not address the impact of Rule 5.5 in their motion.[1]

---

[1] Significantly, the Grievance Panel for the Judicial District of Stamford/Norwalk ("Grievance Panel"), which reviewed a very similar, if not identical, claim regarding whether Mr. Kaufman engaged in the unauthorized practice of law, did review Mr. Kaufman's conduct under Rule 5.5, and "found that [Alan Kaufman, Esq.] did not: engage in the unlicensed practice of law in any jurisdiction; misrepresent his credentials; breach the confidentiality of any privileged communications; improperly attempt to collect legal fees; provide incompetent representation." Conn. Grievance Decision at 3, ECF No. 478-3; *see id.* at 2 ("The Rules of Professional Conduct were considered by the Panel in rendering its decision and, in particular, Rules 5.5, 8.4(3), 1.6, 1.5, and 1.1."). This ruling is certainly not dispositive: the Court has already held that it has no preclusive effect in this proceeding. *See* Ruling and Order on Cross-Mots. for Partial Summ. J. at 30, ECF No. 423. Nonetheless, Defendant's failure to engage with the specific language in Rule 5.5 or provide any evidence or caselaw in order for the Court to do so is telling, or more precisely, supports the Court's legal conclusion about the lack of evidence necessary for this counterclaim to continue going forward. *Cf. Fed. Trade Comm'n v. RGC Advances, LLC*, No. 20-CV-4432 (LAK), 2020 WL 9718871, at *1 (S.D.N.Y. Aug. 13, 2020) (denying a motion to dismiss when the defendants "failed to address the different legal standards" that applied to the plaintiff's claims).

Accordingly, on this record, Defendants are not entitled to judgment as a matter of law on their unauthorized practice of law counterclaim.

The question remains whether there is indirect evidence from which the jury could reasonably infer that Mr. Kaufman did, in fact, engage in the unauthorized practice of law. Defendants maintain that the essential facts are undisputed, suggesting that there are no remaining factual issues to submit to the jury. Defs.' Mem. at 4. But the jury is unequipped to evaluate, on this record, whether or not Mr. Kaufman's conduct qualified as the practice of law. As Defendants point out, the issue of unauthorized practice of law is often a question of law to be resolved by the Court. *See id.* at 3. That is, in part, because of the complex legal standards at issue. Here, the jury was not presented with either appropriate lay or expert testimony explaining how to distinguish between the rendering of legal advice and a lawyer who gives advice on a non-legal matter. *See New Colt Holding Corp. v. RJG Holdings of Fla., Inc.*, No. 3:02-cv-173 (PCD), 2003 WL 23508131, at *2 (D. Conn. Aug. 11, 2003) (noting that expert testimony may be required when an issue is "beyond the understanding of the jury"). Nor did the Defendants present testimony from Mr. Kaufman or anyone else showing directly that Mr. Kaufman was engaged in providing legal opinions on specific issues. As a result, Defendants have not presented sufficient evidence to permit the Court to either grant a directed verdict or to submit this issue to a jury.

Accordingly, the Court will grant a directed verdict to Plaintiff on Defendants' counterclaim. Although the parties addressed only the counterclaim in their motion, the, Court will also grant a directed verdict on Defendants' affirmative defense, which raises the same issue. *See Audet v. Fraser*, No. 3:16-cv-940 (MPS), 2022 WL 1912866, at *1 (D. Conn. June 3, 2022) (reviewing on the merits the plaintiff's motion for a directed verdict on the defendant's

affirmative defense); *Am. & Foreign Ins. Co. v. Bolt*, 106 F.3d 155, 159 (6th Cir. 1997) ("[I]t is accepted that a judge may *sua sponte* grant a directed verdict pursuant to Fed. R. Civ. P. 50(a).").

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's motion for a directed verdict is **GRANTED** and Defendants' motion for a directed verdict is **DENIED.**

As a result, judgment for the Plaintiff will enter on the counterclaim, and as a result, on Defendants' closely related affirmative defense to Plaintiff's claim as well.

**SO ORDERED** at Bridgeport, Connecticut, this 21st day of November, 2022.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE